

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-12-1996

# United States v. Brannan

Precedential or Non-Precedential:

Docket 95-3108

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"United States v. Brannan" (1996). *1996 Decisions.* Paper 244.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/244

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————————————

No. 95-3108

————————————————

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID GEORGE BRANNAN,

Appellant.

————————————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 94-cr-200)

————————————————

Argued September 13, 1995

Before: SLOVITER,

1

*Chief Judge*, ALITO, *Circuit Judge*, and RENDELL, *District Judge*[*].

Filed January 12, 1996

_____

Thomas S. White
Federal Public Defender
Karen Sirianni Gerlach
(Argued)
Assistant Federal Public
Defender
415 Convention Tower
960 Penn Avenue
Pittsburgh, Pennsylvania

Attorneys for Appellant

_____

* Honorable Marjorie O. Rendell, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Frederick W. Thieman
United States Attorney
Bonnie R. Schlueter (Argued)
Assistant United States
Attorney
633 U.S. Post Office &
Courthouse
Pittsburgh, Pennsylvania

Attorneys for Appellee

_____

OPINION OF THE COURT

_____

RENDELL, *District Judge*:

This appeal is from a judgment of sentence imposed after defendant David George Brannan pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Brannan raises two grounds in his appeal. First, he argues that the district court improperly enhanced the offense level by four levels under § 2K2.1(b)(5) of the United States Sentencing Guidelines for the use, possession or transfer of a firearm in connection with another felony. See United States Sentencing Commission, Guidelines Manual §§ 2K2.1(b)(5) (1994) (hereinafter "U.S.S.G.").[0] Second, he contends that the district court failed to properly apply § 5G1.3 of the United States Sentencing Guidelines so as to have his federal sentence run concurrently with a state court sentence he was serving. See U.S.S.G. § 5G1.3(c) (Policy Statement) (hereinafter "U.S.S.G. §5G1.3(c)"). We find the second ground for attack to be valid, and, accordingly, we will remand for resentencing consistent with this opinion.[0]

---

[0]We apply the 1994 edition of the Sentencing Guidelines pursuant to U.S.S.G. § 1B1.11 which dictates that the version of the Guidelines in effect at the time of sentencing is to be used. Brannan was sentenced on February 10, 1995.

[0] The amendments to the Sentencing Guidelines effective November 1, 1995 substantially rewrite U.S.S.G. § 5G1.3(c) and the Commentary thereto. While the amendments do not affect this Court's analysis, the district court in resentencing would normally apply the Guideline in effect at the time of resentencing. See United States v. Kopp, 951 F.2d 521, 534 (3d Cir. 1991). However, if the district court determines that using the amended Guideline would violate the Ex Post Facto Clause of the United States Constitution in that it would yield a harsher result, then it must apply the Guideline in effect at the time the offense was committed. See U.S.S.G. § 1B1.11; see also Kopp, 951 F.2d at 526.

The events giving rise to the instant offense involved the accidental discharge of a gun while it was being removed from the trunk of a car in western Pennsylvania.  Brannan testified that he was interested in selling the gun; he and a friend, Peter Andrulat, traveled on Friday evening, September 11, 1992, to a neighboring town because Andrulat believed that his friend, Richard Hopkins, would be interested in purchasing it.[0]  Brannan indicated that the three men met briefly at a restaurant and then went out to Andrulat's car to show Hopkins the gun; as the gun was being removed from the trunk, it accidentally discharged, and the bullet struck Hopkins in the upper thigh area, severing his femoral artery and causing him to bleed to death.

Brannan pled guilty to involuntary manslaughter in the Court of Common Pleas of Washington County and was sentenced to 18-60 months, less one day, of imprisonment, which he began to serve on June 6, 1994.  On August 30, 1994, nearly two years after the underlying incident occurred, Brannan was indicted in federal court for having been a felon in possession of a firearm. He pled guilty on October 31 and was sentenced on February 10, 1995.  At the time of his sentencing, Brannan was serving the sentence for involuntary manslaughter.

The presentence report prepared for sentencing Brannan recommended a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(5), which provides for such an enhancement where the

---

[0]Brannan was on probation at the time.  He had been told by his parole officer earlier in the day that he could not keep the gun, a .357 handgun which belonged to his wife, in his home.

4

defendant "used or possessed any firearm . . . in connection with another felony offense."  The probation officer gave the following reason to justify the enhancement:

> During the course of the instant offense, the firearm that the defendant possessed discharged, striking Mr. Hopkins and killing him.  This resulted in the defendant's conviction of Involuntary Manslaughter.

Brannan filed two objections to the presentence report prior to sentencing.  First, he objected to the four-level enhancement of his offense level under § 2K2.1(b)(5).  Second, he argued that he should have been given credit for the time he had spent incarcerated in Washington County on the manslaughter conviction under U.S.S.G. § 5G1.3, which would have reduced his sentence for the federal offense by several months.

In addition to objecting to the presentence report, Brannan also requested a downward departure based on his family ties, his employment history, and his employment prospects, relying upon U.S.S.G. §§ 5K2.0, 5H1.5, and 5H1.6.  The government, in turn, requested an upward departure under U.S.S.G. § 4A1.3, arguing that Brannan's criminal history category under-represented the seriousness of his criminal history.

At the time of sentencing, Brannan argued that U.S.S.G. § 2K2.1(b)(5) requires a showing of his intent to use a firearm in order for the enhancement to be applicable.  Section 2K2.1(b)(5) provides that if a defendant used or possessed a firearm in connection with another felony or if a defendant possessed or transferred a firearm with knowledge or intent that

5

it would be used or possessed in connection with another felony, the offense level should be increased by four levels.

He argued that the knowledge and intent element in the second clause should be interpreted to apply to the concept of "used or possessed" in the first clause.  Under Brannan's interpretation, the alleged negligent handling of the firearm involved in the instant set of facts should not have given rise to the four-level increase in offense level.

The sentencing judge indicated his concern with applying the four-level enhancement under § 2K2.1(b)(5) to the negligent use of a firearm involved in this set of facts.  In applying the section as written, however, he found that no element of intent was necessary under the Guidelines, and he found no alternative other than to impose the four-level enhancement.

Brannan next argued that U.S.S.G. § 5G1.3(c) gave the court the authority to impose a sentence to run concurrently with his state court sentence from the date when the state sentence was imposed, giving credit for time served.  Section 5G1.3(c) addresses the situation in which a defendant who is serving an undischarged term of imprisonment is being sentenced for another crime.  This section, together with the accompanying Commentary and Application Notes, sets forth a methodology the court should follow in determining the extent to which the second sentence should run concurrently with, or consecutive to, the sentence already being served.  The government argued that he should serve his Guideline sentence for the instant offense concurrently with

6

the <u>remainder</u> of the unexpired term of imprisonment for this state conviction.

The sentencing court determined that the applicable offense level of 25 and criminal history category of V for the weapon possession offense gave rise to a Guideline sentencing range of 100 to 120 months. The court acknowledged that the issue was governed by § 5G1.3(c) but framed this issue as a choice of either a consecutive or a concurrent sentence, with a related question as to whether "credit" could be given for time already served on the state sentence.

The court appears to have read § 5G1.3(c) as indicating that if the court felt an incremental punishment was required, then the sentence should run consecutively, otherwise it should be concurrent. <u>See</u> Appendix, pp. 118-20. The court could find no authority whereby it could "give credit" for the state sentence.[0] <u>See</u> Appendix, pp. 124-25. It concluded therefore that the sentence it would give -- the minimum it believed it could give, namely, 100 months -- would be concurrent with the remainder of the state sentence. <u>See</u> Appendix, pp. 119, 120, 125. In making its ruling, the court did not refer to the

---

[0]The district court repeatedly noted its discomfort with the length of sentence to be imposed: "I do think that the sentence presented here is one heck of a wack [sic]"; "My only difficulty is the difficulty, I think, with the duration of it. The guideline is longer than what I would impose were the discretion in me"; "I'm not sure there needs to be incremental punishments for that fortuitous event when we're talking about a sentence as serious as this one. I wish that all of the violent criminals I prosecuted in the days that I was a prosecutor had gotten tagged with as much time as what Mr. Brannan is going to get merely for this charge"; "If anything, the federal sentence is the tail wagging the dog." Appendix, pp. 119, 120, 125, 136.

7

Commentary to the Guidelines, or the sentencing methodology under § 5G1.3(c) described in Application Note 3 thereof, nor did it have the benefit of this court's opinion in United States v. Holifield, 53 F.3d 11 (3d Cir. 1995), as to how that methodology can or should be applied.

Brannan also argued that the two-year delay in bringing the charges should be taken into account and also presented evidence as to the innocent nature of this incident and his character as an employed and responsible family man as grounds for a departure. The court rejected these considerations as not sufficient to warrant any relief for Brannan under the Guidelines.[0]

As indicated above, on appeal Brannan presses the need for a finding of intent as a prerequisite for the four-level enhancement under § 2K2.1(b)(5) and raises the implications of Holifield on the sentencing in this case. The government counters that the plain meaning of the Guidelines supports the enhancement. Further, the government focuses its opposition to Brannan's argument under § 5G1.3(c) on his failure at sentencing to request a "downward departure" for time served in prison and its view that the sentencing court properly applied § 5G1.3(c).

DISCUSSION

I.

---

[0] Brannan does not challenge these rulings on appeal.

8

The district court's interpretation of the Guidelines and the extent of its power to depart downward are legal questions subject to plenary review. See United States v. Holifield, 53 F.3d 11, 12-13 (3d Cir. 1995); United States v. Higgins, 967 F.2d 841, 844 (3d Cir. 1992). However, if a defendant has failed to request a departure and first raises the issue on appeal, our review of the record is limited to a determination of whether plain error had been committed. See United States v. Pardo, 25 F.3d 1187, 1193 (3d Cir. 1994).

The government argues that we should apply the "plain error" standard of review to the issue raised under § 5G1.3(c), arguing that Brannan did not specifically request a "downward departure" before the district court under that Guideline, and the issue is being raised for the first time on appeal. The government does concede, however, that Brannan requested application of § 5G1.3(c) to grant him 18 months' credit for time served. See Appendix, pp. 121-23.

We find Brannan's request that his existing sentence and time served be taken into account was sufficient to preserve this issue on appeal. We will not require recitation of magic words, or specific request for departure, in connection with §5G1.3, especially because, as is discussed more fully below, the ability of the court to depart under § 5G1.3(c) is inherent in the section itself. That is, departure may be the result of the court's application of the methodology under this section, rather than an extraneous factor to be applied or considered after the

9

appropriate sentence has been determined.[0]  Further, the relationship between § 5G1.3(c) and departures had not yet been explored by this Court in <u>Holifield</u> at the time this sentencing occurred.  We conclude, therefore, that plenary review of both issues raised is warranted.

## II.

The first issue presented is whether § 2K2.1(b)(5) requires that the "use or possession" be intentional.  If intent is necessary, the alleged negligent use or possession of the firearm in this instance would not have resulted in application of this section, and Brannan would not have received a four-level enhancement of his offense level.  Section 2K2.1(b)(5) of the Guidelines provides:

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels.

U.S.S.G. § 2K2.1(b)(5).

---

[0] The concept of departure in § 5G1.3(c) seems to vary slightly from the concept elsewhere in the Guidelines.  A departure under this section means that the court recognizes time already served for another offense if and to the extent appropriate.  For example, by imposing a 24-month sentence where the Guideline sentence for the second offense calls for a 48-month sentence but the defendant has served 36 months on another charge, the court does not reduce the punishment as such based on some extraneous factor.  Instead, it arrives at an appropriate sentence by recognizing punishment for one crime as serving the purpose of punishment for another.

Brannan makes three arguments:

First, he argues that the semicolon in this section should be ignored and the word "or" be read to mean "in other words."

Second, he contends that use or possession "in connection with" another felony implies an element of intent.

Third, he relies upon Staples v. United States, 114 S. Ct. 1793 (1994), and Ratzlaf v. United States, 114 S. Ct. 655 (1994), for the proposition that before imposing this incremental punishment, mens rea is required for the underlying felony.

The court at sentencing was unsure of the policy behind this Guideline but felt certain both that its meaning was clear and that it applied to Brannan's conduct. We too have little difficulty in determining that the plain meaning of the provision applies to Brannan and that the provision cannot be read to include, imply, or otherwise require that the use or possession was with the intent to commit a crime. We view "or" as a disjunctive, connecting phrases with different meanings. See Reiter v. Sanotone Corp., 442 U.S. 330, 339 (1979). What follows the "or" in § 2K2.1(b)(5) is not merely an explication of what preceded it, as Brannan urges.

That the Sentencing Commission intended that "or" be read as a disjunctive term is clear upon review of the amendments made to § 2K2.1 since its adoption. Section 2K2.1 initially provided for an increased offense level "[i]f the defendant used the firearm in committing or attempting another offense." See U.S.S.G. Appendix C, Amendment 189. An amendment to this

11

Guideline provided for an increased sentence "[i]f the defendant used or possessed the firearm in connection with commission or attempted commission of another offense."  Id.  A separate Guideline was introduced "to address transfer of a weapon with intent or knowledge that it will be used to commit another offense."  Id.  On November 1, 1991, these Guidelines were consolidated and became § 2K2.1(b)(5).  The first part of § 2K2.1(b)(5) addresses use or possession of a firearm in connection with another felony; the second part addresses attempts and transfers.  See U.S.S.G., Appendix C, Amendment 374.  Accordingly, the Sentencing Commission intended § 2K2.1 to provide for a four-level enhancement for two different types of conduct.

As to the contention that "in connection with" another felony implies an element of intent, we can divine no such implication.  We agree with other circuit courts which have considered the issue that "terms used within the federal sentencing guidelines and not specifically defined therein generally should be given their common usage."  United States v. DeLuca, 17 F.3d 6, 9 (1st Cir. 1994).  Thus, "connection," as used in section § 2K2.1(b)(5), is defined as a "causal or logical relation or sequence."  Webster's Ninth New Collegiate Dictionary 278 (1990).  We find that the plain meaning of "in connection with" in § 2K2.1(b)(5) does not suggest that criminal intent need be shown in order to apply this sentencing enhancement provision.  We thus reject Brannan's first two arguments as contrary to the plain language and meaning of the section.

12

Brannan's last argument is premised upon two Supreme Court cases which are easily distinguishable. Staples and Ratzlaf dealt with the requisite intention for conviction of a crime, not for purposes of imposing an enhanced sentence under the Guidelines. They are clearly inapposite. Brannan has not cited, and we cannot find, any authority for the proposition that mens rea must exist in connection with a particular attribute or behavior that will result in enhancement of an offense level for purposes of sentencing. Further, we are unwilling to read this requirement into the Guidelines. We find, therefore, that the district court properly enhanced the offense level under § 2K2.1(b)(5).

## III.

The second issue presented by Brannan involves the application of § 5G1.3(c) of the Guidelines, recently explored by this Court in Holifield. As indicated above, § 5G1.3 addresses the situation in which a defendant already subject to an undischarged term of imprisonment is being sentenced for another offense.[0] Before the district court and on appeal, Brannan

---

[0] Section 5G1.3 has three subsections. Subsection (c) applies if (a) and (b) do not. Section 5G1.3(a) provides that if the second offense was committed while defendant was serving, or after sentencing but before service of, a term of imprisonment, the sentence for the second offense is to run consecutively from the sentence for the first offense. Section 5G1.3(b) provides that if (a) does not apply and if the offense giving rise to the undischarged term of imprisonment was fully taken into account in determining the offense level for the second offense, then the sentence for the second offense shall run concurrently to the undischarged term of imprisonment. Section 5G1.3(c) is labeled a "Policy Statement"; we note that "[t]he policy statements and

13

argued that subsection (c) applies to the instant situation.[0]

Subsection (c) provides:

> [T]he sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.

U.S.S.G. § 5G1.3(c).

The trial judge read the section literally and, finding no basis for incremental punishment, sentenced Brannan to the Guideline sentence for the instant offense -- 100 months, at the lowest end of the sentencing range -- to run concurrent with the undischarged term being served for the manslaughter conviction. The trial judge did not believe he had the power to do anything else. See Appendix, pp. 124-25.

Section 5G1.3(c) is a Policy Statement that is further explored and explained in the Commentary to the Guidelines.[0] As is reflected in the Commentary to § 5G1.3(c), specifically Application Note 3, the sentence that the court imposes under this section should be the result of a methodology that can produce a sentence different from that required by the strict application of the Guideline criminal offense level and criminal history category of the isolated second offense. Application Note 3 indicates that the court should examine the sentence that

---

commentary contained in the guidelines are binding on the federal courts." United States v. Holifield, 53 F.3d 11, 13 n.2 (3d Cir. 1995).

[0]We therefore do not address the question whether U.S.S.G. §5G1.3(b) applies to this case.

[0]As noted above, both the Policy Statements and the Commentary in the Sentencing Guidelines are binding on the federal courts. See United States v. Holifield, 53 F.3d 11, 13 n.2 (3d Cir. 1995).

14

would have resulted if all of the offenses -- in this instance, the manslaughter offense and the possession of a firearm by a convicted felon -- had been federal offenses for which sentences were being imposed at the same time under § 5G1.2.  See U.S.S.G. § 5G1.2 (Sentencing on Multiple Counts of Conviction).

This determination can require an approximation.  As noted in the Application Note, where the sentence being served is a state sentence, as in the instant situation, information available may permit only a rough estimate of the total punishment that would have been imposed under the Guidelines. The methodology calls for the court to engage in a fiction, that is, to approach sentencing as if both offenses were being sentenced at once.

Once the court determines -- whether by approximation, estimation, or otherwise -- what sentence would be called for under the Guidelines, the court then examines whether, in view of the sentence that would have resulted, some incremental punishment for the instant offense is warranted.  This incremental punishment is apparently intended to add consecutive punishment where the sentence already imposed for the prior offense would not suffice as the total sentence using § 5G1.2, so that some recognition of the incremental effect of the later offense, consecutive to the original sentence, is warranted.

As noted in Holifield, the result of these calculations can, however, be a departure; that is, the sentence actually imposed for the second offense, which results from the methodology discussed above, can be different from, and in some

15

instances less than, what would otherwise have been called for under strict application of the Guidelines in sentencing for the second offense alone. The focus of this Guideline section is to determine the appropriate sentence, and if as a result the sentence is less than the Guideline sentence for the second offense, the Guidelines and Holifield permit -- but do not require or even encourage -- this result.

In the instant setting, the application of this methodology could have led to a different result. As sentenced, Brannan will serve a total of 108 months for the two offenses.[0] Under the methodology advocated by the Commentary, the court could have determined, hypothetically, that the Guideline sentence for manslaughter and gun possession, if sentenced together, would have been 100 months; that no incremental penalty was warranted and therefore a concurrent sentence was called for; and that because Brannan had already served eight months for the first offense, it would sentence him to only 92 months for the second offense (to run concurrently with the remaining undischarged term, and consecutive thereafter).[0]

---

[0] Brannan started serving his manslaughter sentence on June 6, 1994 and was sentenced to serve 100 months for the second offense on February 10, 1995, concurrent with the remainder of the first offense term.

[0] This court noted in Holifield that while departure from the Guidelines was not required, the General Counsel to the Sentencing Commission had stated in a letter to a United States Probation Officer that it could be justified:

> Occasionally, a downward departure may be necessary to make this provision work properly. For example, where the defendant has been in state custody for a long time, a downward departure may be the only feasible way to achieve an appropriate total punishment, assuming

16

The Commentary states that the "methodology does not, itself, require the court to depart from the guideline range established for the instant federal offense." U.S.S.G. § 5G1.3 (Commentary). However, as noted by the court in Holifield, the court can depart if the court believes it should do so in order to arrive at the appropriate sentence.[0] Each case will be different, depending on the application of the methodology to the facts.

Therefore, this methodology rests discretion in the trial court in the "as if" scenario, to take into account both offenses, how they would be treated under § 5G1.2 if they were multiple counts, and whether incremental punishment is necessary. If the sentencing court engages in this exercise as recommended by the methodology, it is not constrained by the concept of "giving credit" for prior time but can give recognition to time served by following the procedures suggested. The result of the methodology dictates the attributes of the appropriate sentence. The examples set forth in the Illustrations following the Application Notes clarify the methodology.

---

the court wishes to employ a departure to achieve the desired objective.
Holifield, 53 F.3d at 14 n.5 (citation omitted).

[0]Other circuits agree that courts may depart from the Guideline sentencing range under § 5G1.3(c) when sufficient justification exists. See United States v. Whiteley, 54 F.3d 85, 91 (2d Cir. 1995) (stating that a court may impose a sentence lower than the sentencing range if it departs downward); United States v. Gullickson, 981 F.2d 344, 349 (8th Cir. 1992) (stating that district court may depart from sentencing range if sufficient justification exists).

17

We indicated in <u>Holifield</u> that the sentencing court is not required to apply the methodology and is not required to depart. In the instant case, the sentencing court clearly was uncomfortable with the length of sentence and was searching for a way to reduce it. However, that court believed it had no power to sentence Brannan to anything other than the applicable Guideline sentence for the second offense to run concurrent from the date of sentencing. See <u>supra</u>, n. 5. We conclude that the district court did have the power to depart under the § 5G1.3(c) methodology, and we therefore will remand so that the district court will have the opportunity to vacate the sentence and resentence consistent with this opinion.

_____