**UNITED STATES of America,
Respondent,**

v.

**Ronald Edward SMITH, Petitioner.**

**No. Civ.A. 99–1688.**

United States District Court,
W.D. Pennsylvania.

May 30, 2000.

---

W. Penn Hackney, Federal Public Defender's Office, Pittsburgh, PA, Ronald Edward Smith, pro se, FCI Cumberland, Cumberland, MD, for Ronald Edward Smith, plaintiff.

## MEMORANDUM OPINION

LEE, District Judge.

### Background

Before the Court is defendant Ronald Edward Smith's pro se (i) Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Document No. 199 at Criminal No. 94–222) (hereafter, "section 2255 motion to vacate"). After careful consideration of the section 2255 motion to vacate, with memorandum of law in support, the government's response and memorandum in opposition thereto, and defendant's reply to the government's response, the Court will grant petitioner's motion in part and deny it in part.[1]

This case requires navigation of the labyrinth found at the conjunction of the various statutory provisions and United States Sentencing Guidelines regarding concurrent versus consecutive state and federal sentences, credit for time spent in incarceration, commencement of sentence and the authority of courts versus the Bureau of Prisons ("BOP") regarding the correct computation of defendant's sentence. The BOP concluded that defendant should not get any credit for time he spent serving state sentences in state custody even though the state court judges expressly made their sentences concurrent to this Court's previously imposed federal sentence, and even though the state offenses for which he received his state sentences were treated as relevant conduct by the Government and the probation office in arriving at an appropriate federal sentence. In effect, then, the BOP treated petitioner's federal 84 month sentence as running consecutive to his state sentence, which means petitioner will be released several years beyond the date he expected to be released in light of the state judges making their sentence concurrent to this Court's sentence.

### Facts

The relevant facts set forth in the section 2255 motion to vacate are essentially

---

1. Defendant also filed a Motion for Equitable Relief and Petitioner Initiated Summary Judgment (Document No. 201) based upon the government's failure to respond to his section 2255 petition in timely fashion. The Government filed its response to the section 2255 immediately after defendant filed his motion for summary judgment, but three weeks after its response was due by order of court. Defendant's reply to the government's response appears to have abandoned the motion for equitable relief and summary judgment, and in any event, it is not this Court's practice in civil or collateral criminal cases to grant "summary judgment" solely on the basis of a single untimely response of a duration of several weeks. The Motion for Equitable Relief and Petitioner Initiated Summary Judgment will therefore be denied.

undisputed, and are summarized in the following chronology of events:

- ▶ April 27, 1994]. Date specified in Count II of ten count federal indictment for petitioner's possession with intent to distribute 7.7 grams of crack cocaine. The conspiracy to distribute crack cocaine charged in Count I of the Indictment was alleged to have taken place between April, 1994, and August 18, 1994. (Petitioner was named as a defendant only at Counts I and II.)

- ▶ May 5, 1994]. Arrested by City of Pittsburgh police officers on state charges of possession of 7 grams of crack cocaine with intent to distribute. Released on bond. (Evidence of this incident was admitted in federal prosecution as prior criminal conduct pursuant to F.R.E. 404(b)).

- ▶ October 18, 1994]. Federal indictment issued.

- ▶ December 2, 1994] Arrested by City of Pittsburgh police officers on state charges of possession of 1.9 grams of crack cocaine, aggravated assault and resisting arrest. Defendant not released on bond.

- ▶ December 8, 1994]. Federal indictment unsealed.

- ▶ December 14, 1994]. Taken into federal custody pursuant to writ of habeas corpus ad prosequendum (according to Presentence Investigation Report, or "PSI").

- ▶ April 25, 1995]. Jury verdict returned; petitioner was convicted at Count I of the indictment for conspiracy to distribute crack cocaine between April and August, 1994, along with his two co-defendants, and acquitted at Count II of possession with intent to distribute on April 27, 1994.

- ▶ July 14, 1995]. Sentenced by this Court to 84 months imprisonment; judgment order states defendant is to be committed to BOP.

- ▶ August 29, 1995]. According to BOP printouts attached to petitioner's section 2255 motion to vacate, petitioner returned to state custody this day. BOP gives petitioner credit on federal sentence for time period between December 14, 1995, and August 29, 1995.

- ▶ August 30, 1995]. Court of Common Pleas of Allegheny County, Judge Terrence O'Brien, sentences petitioner to 2–4 years imprisonment concurrent to federal sentence on the charges stemming from the May 5, 1994, incident.

- ▶ March 7, 1996]. Court of Common Pleas of Allegheny County, Judge Walter Little, sentences petitioner to 2–5 years imprisonment concurrent to both the federal and previously imposed state sentences, on the charges stemming from the December 2, 1994, incident.

- ▶ March 12, 1996]. Transported to state facility to serve state sentences, which initially rejected petitioner because state officials believed he was still in federal custody (according to petitioner, but undisputed by Government).

- ▶ March 13, 1996]. Accepted into state facility to serve state sentences.

- ▶ October 18, 1996]. Conviction and judgment of sentence affirmed on direct appeal by the United States Court of Appeals for the Third Circuit.

- ▶ November 23, 1998]. After being paroled by state officials on the state sentence, petitioner transported to FCI– Cumberland, Maryland, at which point he learns, for the first time, that the BOP will not give him credit for the time served in state prison on the state sentence, and that his 84 months federal sentence is deemed to commence as of this date.

▶ February 8, 1999]. Petitioner filed Request for Administrative Remedy with BOP/FCI– Cumberland. Warden Mark Henry denied relief initially in March, 1999, and his decision was affirmed on administrative appeal.

▶ August 10, 1999]. Petitioner's habeas corpus application pursuant to 28 U.S.C. § 2241 is denied by United States District Court for the District of Maryland.

▶ March 29, 2000]. District Court's denial of relief on petitioner's § 2241 petition is affirmed per curiam by the United States Court of Appeals for the Fourth Circuit. *Smith v. Henry,* 2000 WL 364206 (4th Cir. 2000).

On October 18, 1999, petitioner, Ronald Edward Smith, filed his section 2255 motion to vacate, "based on the failure of the petitioner to receive a lawful sentence, and effective assistance of counsel. The defendant Prays for a reduction of Sentence or *Order* that the Federal Sentence be made to run concurrent with the State sentences the defendant has already served." Petition, Prayer for Relief. Petitioner also requests appointment of counsel, discovery, and an evidentiary hearing should immediate relief not be granted, and any other relief that this Court deems just and appropriate under the circumstances.

In summary, petitioner's well drafted and researched section 2255 motion to vacate asserts that the BOP has failed to give him proper credit for time spent in state custody on state sentences that were imposed after this Court entered its sentence, where the state court judges specifically directed that the state sentences were to be concurrent both to each other and to the federal sentence. When he was released from state custody and transported to FCI– Cumberland, Maryland, to begin serving his federal sentence on November 23, 1998, petitioner learned, for the

first time, that the BOP was not crediting him with federal custody for the time spent in a state facility serving his state sentences. If petitioner is correct, the BOP has "added" up to several years to his federal sentence (although it appears it has given him credit for the period between December 14, 1994, and August 29, 1995).[2]

The section 2255 motion to vacate argues both that the BOP abused its discretion in failing to properly credit him for the time served in state custody, and that this Court's sentence of July 14, 1995, was illegal because it failed to specify that it should be served concurrently with the yet to be imposed state sentences, and that counsel was ineffective for failing to request the Court to run his federal sentence concurrent to those not yet imposed state sentences or otherwise take steps to ensure that his time spent in state custody on the subsequently imposed state sentences would count toward his 84 months' imprisonment in federal custody.

Specifically, petitioner raises the following four issues:

A. Ground one: Ineffective Assistance of Counsel

Defense Counsel failed to ensure that the defendant would be properly sentence (sic) pursuant to 5G1.3 of the Guidelines. Had defense counsel properly moved the District Court under 5G1.3, the Court could have tailored the sentence to a term of undischarged imprisonment. The District Court could have also Order (sic) the Federal Sentence to be fully concurrent with the state sentence if the state judges had also made their sentences to run concurrently with the federal sentence. The *failure of the defense counsel to take any steps to ensure a fully or partially concurrent sentence was ineffective assistance of counsel. See Memorandum in Support* pp. 9–12

---

**2.** It is not necessary to 'do the math' at this point, given the Court's resolution of the is-

sues raised in the section 2255 motion to vacate.

B. Ground two: The Consecutive Sentence Is A Fundamental Miscarriage Of Justice

The resulting consecutive sentence which frustrates the intentions of the State of Pennsylvania Courts was only achieved by the Government through the back door. The Government requested a more lengthy sentence in the Federal Court, however, (sic) the Honorable Judge Donald L. (sic) Lee denied the request. The State of Pennsylvania prosecutor also requested more lengthy and consecutive sentences in State Court, but both Judges specifically denied that request. However, the Government has resorted to using the United States Bureau of Prisons to achieve the same unlawful end. This is a miscarriage of justice and allows the court to invoke a proper judicial remedy. See Memorandum In Support at p. 12

C. Ground three: BOP Did Not Give Full And Fair Consideration For Concurrent Sentence

The BOP had the authority to issue a *Nunc Pro Tunc* application of the sentencing Order which would have allowed the BOP to give full credit for all of the time spent in state custody. When the defendant first requested such a hearing and order, the prison staff would not make the request. It was only ... through the administrative remedy process that the BOP stated that it had refused to issue an Order. The BOP did not give a full and fair hearing of the issue as required by law. This Court has the power to exercise its supervisory powers to compel lawful compliance. See Memorandum In Support at PP. 13–16

D. Ground four: District may Utilize Rule 36 of the Federal Rules of Appellate (sic; petitioner relies on Rule 36 of the Federal Rules of Criminal Procedure) Procedure To Correct Error And Reflect Original Intention Of Sentencing Court.

The defendant believes it is the understanding of all parties that if the defendant received a concurrent sentence by the state court that he would serve a concurrent sentence. However, the defendant has never seen a Judgement and Commitment order and does not know if the intentions of the Judge was written on the order. As well, the defendant asks this Court to reissue a Judgement and Commitment Order to reflect the federal sentence would be concurrent with the served state sentence.

Section 2255 Motion to Vacate, at 5–6.

Initially, the Court agrees with petitioner and the government that his section 2255 motion to vacate is timely under 18 U.S.C. § 2255(4), which provides that the one-year period of limitation shall run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Because petitioner could not have learned until, at the earliest, November 23, 1998, that the BOP did not consider his federal sentence to have been running concurrently to the state sentences, his section 2255 motion to vacate was timely filed on October 18, 1999.

The Court also observes preliminarily that, on or about March 30, 2000, this Court gave petitioner *Miller* notice pursuant to the directives of the United States Court of Appeals for the Third Circuit in *United States v. Miller*, 197 F.3d 644 (3d Cir.1999), which, *inter alia*, required petitioner to file a statement of intent with the Clerk of Court setting forth his intention to have his motion ruled upon as filed, or to withdraw his motion and resubmit one all-inclusive section 2255 petition. On April 20, 2000, petitioner filed his statement of intent declaring his intention to have this Court rule upon his section 2255 motion to vacate as filed, in exercising his *Miller* options. (Document No. 205 at Criminal No. 94–222.)

In its response to petitioner's section 2255 motion to vacate, the government

agrees with petitioner that "The ruling of the BOP effectively negated the impact of the state court judges' ordering of their sentences to run concurrently with the federal sentence ... [and that] the defendant may well have a viable argument...." Government's Response, p. 2 at 2. Nevertheless, the government maintains that petitioner's real gripe is with the BOP and its calculation of sentence, and that any remedy for a miscalculation by the BOP must be pursuant to 28 U.S.C. § 2241 addressed to the district court of petitioner's place of confinement, which is the United States District Court for the District of Maryland, after petitioner had exhausted his administrative remedies within the BOP.

The government also argues that counsel could not have been ineffective for failing to request a concurrent sentence pursuant to section 5G1.3 of the United States Sentencing Guidelines, because that section only applies to a defendant who is already subject to an undischarged term of imprisonment and that counsel cannot be ineffective for failing to raise a frivolous argument. The government further asserts there was no miscarriage of justice that would qualify petitioner for relief in this Court, and that Rule 36 of the Federal Rules of Criminal Procedure is inapplicable as that section only permits the Court to correct a clerical or technical error in a commitment order.

**BOP's Calculation of Sentence**

▆▆▆ Petitioner's second and third grounds for relief pose direct challenges to the calculation by the BOP of his federal sentence, including when that sentence commenced and the BOP's refusal to issue a *nunc pro tunc* designation of the state facilities as the place for serving his federal sentence, which would in effect have made his state sentences concurrent to the federal sentence. The exclusive remedy for challenging the BOP's calculation of a federal sentence is a habeas corpus petition filed pursuant to 28 U.S.C. § 2241, directed to the district court in the United States District Court wherein the petitioner is incarcerated, and naming the warden of the federal facility as a respondent. *E.G., Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir.1994); *Rios v. Wiley*, 201 F.3d 257 (3d Cir.2000); *Barden v. Keohane*, 921 F.2d 476, 478–79 (3d Cir.1990); *Nwanze v. Hahn*, 97 F.Supp.2d 665, ––– – –––, 2000 WL 623235, *3–*4 (W.D.Pa.2000) (habeas corpus is exclusive remedy for a prisoner who challenges the fact or duration of his confinement and seeks as his relief immediate or speedier release from confinement); *Chambers v. Holland*, 920 F.Supp. 618 (M.D.Pa.1996). There is no question that the BOP has discretion to designate the place of a prisoner's imprisonment, 18 U.S.C. § 3621(b), and that the BOP may exercise that discretion to designate, *nunc pro tunc*, a state facility where petitioner has served a state sentence as the place of confinement for purposes of serving his or her federal sentence. *Barden*, 921 F.2d at 478, 482–84.

*Barden* presented a remarkably similar scenario to petitioner's. Mr. Barden was serving a twenty-year term of imprisonment for bank robbery, and the government took the position he had almost seventeen years to go because his federal term could not begin until February 12, 1987, the day Barden arrived at a federal facility to commence service of his federal sentence. Before his arrival in federal custody, Barden already had served more than ten years on state sentences that the state sentencing court expressly indicated should run concurrently with his federal sentence. The Court of Appeals described the problem:

Barden says the federal authorities made a mistake in failing to designate the state prison as the place of confinement for his federal sentence. This designation, he argues, is a necessary prerequisite to carrying out the intention of the state sentencing court that his state sentence be served concurrently with his federal sentence. Barden claims that the federal authorities can and should

correct their mistake by a *nunc pro tunc* exercise of their power to designate the place of confinement, and that he has a right to have an administrative determination of this issue because he would be eligible for an earlier release if the state prison were designated *nunc pro tunc* as a place for him to serve his federal sentence. The federal government insists that all that matters is the date Barden was turned over from state to federal custody and that the intention of the state court that Barden's state sentence run concurrently with his federal sentence is immaterial.

921 F.2d at 477–78 (footnotes omitted).

Rejecting the government's position, the Court of Appeals for the Third Circuit held:

Whether Barden's actions while under confinement in both the Pennsylvania and federal prisons, the intent of the state judge that Barden's state sentence be served concurrently with the earlier federal sentence and any other broadly relevant characteristics or circumstances entitle Barden to relief in the form of a *nunc pro tunc* designation of the state prison as a place of federal confinement, even if the failure so to designate it was the result of mistake or inadvertence, is a matter within the Bureau's sound discretion. We hold only that the Bureau has power to grant relief, that Barden is entitled to have the Bureau examine his case and that habeas as authorized by 18 U.S.C.A. § 2241 is an appropriate judicial means of compelling that examination. A redesignation of the state prison where he spent more than ten years as a place of federal confinement plainly would affect the absolute term of his confinement as well as his right to parole....

Under the statute and the Bureau's regulations, Barden is entitled to "fair treatment" on his application for *nunc pro tunc* designation of the state facility as a place of confinement for his federal sentence. *See* 28 C.F.R. 541.12 (1989)

("[Inmates] have the right to expect that as a human being [they] will be treated respectfully, impartially and fairly by all personnel.").

*Id.,* at 483.

■ Petitioner's situation would seem to present a compelling case for the *nunc pro tunc* designation of the state facility wherein he served his state sentences (that were expressly directed by the state judges to be served concurrent to his federal sentence) as the place of service of his federal sentence, which would thus make his federal sentence truly concurrent to the state sentences. The BOP's failure to exercise its discretion to consider such a *nunc pro tunc* designation, or its abuse of discretion in making its decision, are within the jurisdiction of a federal court to review pursuant to section 2241. *Barden; Rios.* However, the only federal court with jurisdiction to review the BOP's refusal to make that designation is the United States District Court for the District of Maryland under 28 U.S.C. § 2241.

Moreover, petitioner alleges in his section 2255 motion to vacate that, in fact, he has petitioned the BOP to make the *nunc pro tunc* designation, and following the BOP's denial of that request and administrative appeals, he filed a habeas corpus petition pursuant to 18 U.S.C. § 2241 in the District of Maryland. The district court denied the section 2241 petition, apparently without requiring a response from the respondent, Kevin Henry, the Warden at FCI– Cumberland. The United States Court of Appeals for the Fourth Circuit has affirmed that denial by per curium opinion on March 29, 2000. *Smith v. Henry,* 210 F.3d 362 (4th Cir.2000) (Table).

■ Thus, even if this Court were inclined to find an abuse of discretion in the BOP's refusal to designate the state facility *nunc pro tunc* as the place for serving petitioner's federal sentence, it has no jurisdiction over a section 2241 petition, which is exclusively in the jurisdiction of the

federal district court in the place of confinement. Moreover, the law of the case doctrine prevents this Court from revisiting petitioner's direct challenge to the BOP's calculation of his sentence pursuant to section 2241 where that issue has been decided adversely by the Maryland district and appellate courts. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *P.I.R.G. New Jersey v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir.1997).

Accordingly, because this Court has no jurisdiction to address petitioner's second and third grounds for relief directly challenging the BOP's calculation of his sentence, and because the District Court for the District of Maryland and the United States Court of Appeals for the Fourth Circuit have decided the issue adversely to petitioner pursuant to his section 2241 habeas corpus petition, this Court must deny the relief requested on these two grounds with prejudice.

### Federal Rules of Criminal Procedure—Rule 36

Petitioner's fourth ground for relief is predicated upon Fed.R.Crim.P. 36, which provides: "Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders." Petitioner believes this Court's oversight or omission was its failure to have the sentence and commitment order reflect this Court's intention, if it was its intention, to impose the federal sentence concurrent to the yet to be imposed state sentences. There are two impediments to considering granting relief under Rule 36.

■ First, changing the sentence and commitment order to run the federal sentence concurrent to the state sentences (now imposed and served) would clearly be a substantive modification of sentence and not the sort of technical, clerical mistake

contemplated by the rule. *See, e.g. United States v. Werber*, 51 F.3d 342 (2d Cir.1995) (district court lacked jurisdiction under Rule 36 to modify a sentence to reflect its unexpressed intention at sentencing to depart in order to ensure defendants received credit for time spent imprisoned on state sentences); *United States v. Guevremont*, 829 F.2d 423, 426 (3d Cir.1987) (a Rule 36 error "must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature."); *United States v. DeLeo*, 644 F.2d 300, 301–02 (3d Cir.1981) ("Rule 36 applies only to clerical mistakes and errors in the record; it does not authorize substantive alteration of a final judgment.").

Second, as is explained in the next section, it was not this Court's intention to sentence defendant concurrently to his not yet imposed state sentences. Had the Court considered the issue, it would have concluded, as it does now, that it had no authority to make the sentence either concurrent or consecutive to non-existent state sentences which may or may not have come into being, but the fact is the Court simply did not consider the issue one way or the other. Thus, even if the Court could use Rule 36 to alter the judgment order to reflect an unstated intention, to impose a "concurrent" modifier at this stage would go far beyond correcting a clerical oversight or omission, it would be altering the judgment of sentence as imposed and as it was in fact intended to be imposed at the time, rightly or wrongly.

Petitioner is not entitled to relief under Rule 36.

### Ineffective Assistance of Counsel

■ Petitioner's first ground for relief states a cognizable claim under section 2255, based upon the purported ineffective assistance of his trial counsel in failing to take some steps to ensure that he would not be in the predicament he is in today. In this claim, petitioner in fact challenges the validity of the Court's *sentence* in light

of counsel's alleged constitutionally deficient and ineffective representation, and not the calculation of the BOP. Such ineffective assistance of counsel at sentencing claims are properly brought before the sentencing court pursuant to section 2255. *See, e.g., United States v. Mannino,* 212 F.3d 835, 839 (3d Cir.2000); *United States v. Headley,* 923 F.2d 1079, 1083–84 (3d Cir.1991).

Section 2255, 28 U.S.C. § 2255 provides, in relevant part:

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

██ Whether to conduct a hearing is within the sound discretion of the district court. *United States v. Day,* 969 F.2d 39, 41 (3d Cir.1992), *quoting Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989), *cert. denied* 500 U.S. 954, 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991). In exercising that discretion, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Day,* 969 F.2d at 41–42 (citation omitted). *See also* Rules Govern-

ing Section 2255 Proceedings, Rules 4 and 8. The court should view the factual allegations in the light most favorable to the petitioner. *Government of the Virgin Islands v. Weatherwax,* 20 F.3d 572, 574 (3d Cir.1994) (district court erred in failing to conduct evidentiary hearing on petitioner's non-frivolous allegations of ineffective assistance of counsel) (subsequent history omitted).

For petitioner to establish counsel was ineffective, he must show counsel's performance (i) was in fact deficient and (ii) that the deficient performance so prejudiced the defense as to raise doubt to the accuracy of the outcome of the trial [or the sentence]; i.e., petitioner must demonstrate a reasonable probability that, but for counsel's deficiency, the outcome of the trial [or sentence] would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's conduct presumptively "falls within the wide range of reasonable professional assistance," and the defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689–90, 104 S.Ct. 2052 (citation omitted). On the other hand, the mere fact that counsel's challenged performance or tactic can be called "strategic" in the sense it was deliberate, does not answer the dispositive question of whether that decision or tactic fell within the wide range of "reasonable professional assistance." *Davidson v. United States,* 951 F.Supp. 555, 558 (W.D.Pa.1996), *quoting Government of the Virgin Islands v. Weatherwax,* 77 F.3d 1425, 1431–32 (3d Cir.), *cert. denied* 519 U.S. 1020, 117 S.Ct. 538, 136 L.Ed.2d 423 (1996). "Reasonable trial strategy must, by definition, be reasonable." *Davidson,* 951 F.Supp. at 558.

Counsel's strategy must be judged by a standard of reasonableness based on the prevailing norms of the legal profession. *Berryman v. Morton,* 100 F.3d 1089, 1094 (3d Cir.1996) (*Strickland* standards for claims of ineffective assistance of counsel

unchanged under Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110·Stat. 1214). Ineffective assistance of counsel will not be found simply because, with the assistance of hindsight, the reviewing court disagrees with counsel's strategy. *Green v. Johnson,* 116 F.3d 1115, 1122 (5th Cir.1997).

In the context of a section 2255 petition for collateral relief, the Court of Appeals for the Third Circuit has offered the following guidance:

> The ... test for determining whether a hearing should be held on an ineffectiveness claim is slightly altered by the *Strickland* holding. Our analysis of allegations of ineffectiveness of counsel breaks down into two parts. First, we must determine whether the district court considered as true all appellant's nonfrivolous factual claims. This step requires that we review whether the district court properly found certain allegations frivolous. Second, we must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel. To evaluate claims under this second step, we must turn to both prongs of the *Strickland* test. If a nonfrivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing. If, on the other hand, a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under *Strickland,* then further factual development in the form of a hearing is required. That is, if a nonfrivolous claim does not conclusively fail either prong of the *Strickland* test, then a hearing must be held. Thus, the district court must employ the *Strickland* analysis at least once, and may have to employ it twice—first, as a threshold analysis of all claims on a limited record, and then again only on colorable claims after full factual development of those claims.

*United States v. Dawson,* 857 F.2d 923, 927–28 (3d Cir.1988).

■ The principal argument advanced by petitioner in his ineffective assistance of counsel claim is that defense counsel failed to secure a federal sentence specifically made to run concurrent to any sentence to be imposed on his pending state ·charges, which clearly were related to his federal indictment. More broadly, he argues that counsel was ineffective in failing to take some step or pursue some procedure that would have avoided the consequences he faces today, i.e., a federal sentence running consecutive to the already served state sentence, thus drastically increasing his total period of confinement.

The relevant statutory provision, 18 U.S.C. § 3584, states as follows:

Multiple sentences of imprisonment

(a) Imposition of concurrent or consecutive terms.—If multiple terms of imprisonment are imposed on a defendant at the same time, or *if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment,* the *terms may run concurrently or consecutively,* except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

(b) Factors to be considered in imposing concurrent or consecutive terms.—The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

(c) Treatment of multiple sentence as an aggregate.—Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

18 U.S.C. § 3584 (emphasis added).

Section 5G1.3 of the United States Sentencing Guidelines, entitled "Imposition of a Sentence on a Defendant *Subject to an Undischarged Term of Imprisonment*" (emphasis added), provides in turn:

(a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the *undischarged term of imprisonment.*

(b) If subsection (a) does not apply, and the *undischarged term of imprisonment* resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the *undischarged term of imprisonment.*

(c) (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the *prior undischarged term of imprisonment* to achieve a reasonable punishment for the instant offense.

USSG § 5G1.3 (emphasis added).

By their plain terms, these provisions apply where a defendant is already subject to a prior undischarged term of imprisonment, and do not appear to embrace the situation where a defendant is simply incarcerated in a state facility while awaiting trial on state charges. This makes eminent sense, because there is no way to tell whether a pending state charge is going to result in acquittal, conviction, guilty plea, nol pros, or some other disposition, or what the state sentence will be if the defendant pleads guilty or is convicted, and attempting to achieve a just and fair total time of confinement ("a reasonable punishment for the instant offense", USSG § 5G1.3(c)) by sequential reference to a non-existing state sentence is certainly problematic, to say the least.

Nevertheless, there is an even split amongst the circuits that have considered the issue of whether the sentencing court may make the federal sentence run either concurrently or consecutively to a yet to be imposed but anticipated state sentence. The Court of Appeals for the Seventh Circuit most recently addressed the issue in *Romandine v. United States,* 206 F.3d 731 (7th Cir.2000), collected and reviewed the cases, and decided that a district court has no authority to make a sentence either concurrent or consecutive to a state sentence that has not been imposed. Speaking for the panel, Judge Easterbrook. stated:

"[I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." 18 U.S.C. § 3584(a).... Neither § 3584(a) nor any other statute of which we are aware authorizes a federal judge to declare that his sentence must run consecutively to some sentence that may be imposed in the future.... But sentences may well run consecutively by force of law; indeed, the subject may simply be out of the judge's hands. The final sentence of § 3584(a) reads: "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." A judge cannot make his sentence concurrent to nonexistent sentences that some other tribunal may or may not impose; thus the sentence is automatically consecutive.

The next judge in line may make service concurrent in practical effect. For

example, the state judge could have given Romandine a discount of 10 months on account of his undischarged federal sentence. Likewise the Attorney General could make the federal sentence run concurrently by designating the state prison as a place of federal confinement, so that the clock would start to tick on the federal sentence. "A sentence to a term of imprisonment commences on the date the defendant is received in custody ... [at] the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). All the Attorney General has to do is designate the state prison as "the official detention facility at which the sentence 'is to be served." *See* 18 U.S.C. § 3621(b); *United States v. Hill,* 48 F.3d 228, 234 (7th Cir.1995). By refusing to make this designation, and by instead lodging a detainer with state officials, the Attorney General can ensure consecutive service (although the Attorney General could not prevent the state from releasing its prisoner early because of the state's anticipation that federal time lay ahead). A legal error one way or the other in the exercise of this power could be reviewed under sec. 2241....

*Other courts of appeals are divided on the question whether a district court may require its sentence· to be served consecutively to a state sentence that will be imposed in the future. See United States v. Brown,* 920 F.2d 1212, 1217 (5th Cir.1991) (yes); *United States v. Quintero,* 157 F.3d 1038 (6th Cir.1998) (no); *United States v. Clayton,* 927 F.2d 491 (9th Cir.1991) (no); *United States v. Williams,* 46 F.3d 57 (10th Cir.1995) (yes); *United States v. Ballard,* 6 F.3d 1502, 1510 (11th Cir.1993) (yes). *We join the circuits that answer "no," because sec. 3584(a) allows the district judge to specify the sequence of service only when sentences are imposed at the same time, or the other sentence is "an undischarged term of imprisonment" to which the defendant is "already subject".* But the answer does not matter,

and the conflict is illusory, for reasons we have given: the final sentence of sec. 3584(a) makes the federal sentence presumptively consecutive in all unprovided-for cases, and the effective decision then is made by the Attorney General (or the state judge) rather than the federal judge.

*Romandine,* 206 F.3d at 737–38 (emphasis added).

This Court agrees with the reasoning of *Romandine,* and also that of *United States v. Quintero,* 157 F.3d 1038 (6th Cir.1998), as being more in keeping with the plain language of the · relevant statutory and guidelines· provisions, common sense, and with the legislative history that exists. *Quintero,* 157 F.3d at 1040–41. *Qunitero* states, in relevant part:

We hold that 18 U.S.C. § 3584(a) does not authorize district courts to order a sentence to be served consecutively to a not-yet-imposed state sentence. To reach our conclusion, we primarily rely on the language of section 3584(a). Section 3584(a) only authorizes district courts to impose concurrent or consecutive sentences if the court either imposes multiple terms of imprisonment on the defendant at the same time or imposes a sentence on a defendant who is "already subject to an undischarged term of imprisonment." 18 U.S.C. § 3584(a).

\*\*\*

Other circuits have reached the opposite conclusion that section 3584(a) permits a district court to impose a sentence to be served consecutively to a yet to be imposed state sentence. *See United States v. Williams,* 46 F.3d 57, 58–59 (10th Cir.1995) [additional citations omitted]. The Tenth Circuit, in *Williams,* relied on the "plain meaning" of the last sentence of section 3584(a), which provides that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."

*See* 46 F.3d at 58–59. The *Williams* court also stated that "[w]e find no language in section 3584(a) prohibiting a district court from ordering that a federal sentence be served consecutively to a state sentence that has not yet been imposed." *Id.* at 59.

We disagree with the *Williams* court's reading of the final sentence of section 3584(a). The language neither abrogates the requirement that to run consecutively there be an undischarged sentence or sentences imposed at the same time nor expands a district court's authority; it establishes a default rule that applies if a district court fails to specify whether a sentence should run concurrently or consecutively and either of the initial two conditions are satisfied— "multiple terms of imprisonment are imposed on a defendant at the same time, or ... a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment." 18 U.S.C. § 3584(a).

157 F.3d at 1039–40 (footnotes omitted).

The cases in the "Yes" camp are less compelling, although their interpretations of 18 U.S.C. § 3584 and section 5G1.3 of the United States Sentencing Guidelines certainly cannot be said to be unreasonable. On balance, however, this Court adopts the better reasoned decisions of the Seventh and Sixth Circuit Courts of Appeal in *Romandine* and *Qunitero*. *See also DeLima v. United States*, 41 F.Supp.2d 359, 361 (E.D.N.Y.1999), *aff'd* 2000 WL 534248 (2d Cir.2000) (district court holding that to determine under USSG § 5G1.3(c) whether to run a sentence concurrent, partially concurrent or consecutive to a yet to be imposed sentence in order to arrive at a "reasonable punishment for the instant offense" "would require attributes this Court lacks, including clairvoyance as to the ultimate outcome of the state charges.")

Although the Court of Appeals for the Third Circuit has not specifically addressed the issue, there are several decisions that strongly indicate it will join the "No" camp. Perhaps most supportive is *Barden.* As noted, the facts and sequential timing of sentences in *Barden* were quite similar to Mr. Smith's case. While the Court found that the BOP had the discretion to designate Barden's place of confinement *nunc pro tunc* as the state institution in which he had been confined on his state sentence (which would in effect give him credit for time spent in state custody on a term of imprisonment as if it had been running concurrent to the federal sentence), the Court also explicitly stated that "the federal sentence, as it now stands, cannot be made to run concurrently with the state sentence," because "the *federal sentencing court ... lacks the power to order concurrency* on the facts of this case...." *Barden,* 921 F.2d at 480, 483 (emphasis added). In contrast to the BOP's wide discretion to so designate the place of confinement *nunc pro tunc,* "the *sentencing court not only was unable to order concurrency* because it sentenced Barden before the state did but *was actually powerless to do so.*" *Id.* at 484 (emphasis added), *citing Gomori v. Arnold,* 533 F.2d 871 (3d Cir.1976). *See also United States v. Brannan,* 74 F.3d 448, 454 (3d Cir.1996) ("§ 5G1.3 addresses the situation in which a defendant *already subject* to an undischarged term of imprisonment is being sentenced for another offense."); *United States v. Pungitore,* 910 F.2d 1084, 1118–19 (3d Cir.1990) (while the district court had the discretion to order the federal sentences to run consecutively to unexpired state sentences even though the state sentence were on appeal in state court, the Court of Appeals recognized that "the imposition of consecutive federal sentences may raise problems when the state sentences have not yet been imposed...."); *United States v. Dent,* 1999 WL 717114 (E.D.Pa.1999) ("To the extent that Petitioner claims that his counsel was ineffective for failing to bring to the Court's attention that the Court had the authority under U.S.S.G. § 5G1.3(c) to run

**346**

a federal sentence 'concurrently to ... [a] prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense,' that claim is without foundation. First, Petitioner was not subject to an undischarged term of imprisonment at the time he was sentenced.").

█ Because this Court concludes that it has, and had, no authority to apply 18 U.S.C. § 3584(a) or USSG § 5G1.3 to direct that petitioner's federal sentence run concurrent to the two state sentences that were anticipated at the time of sentencing but not yet imposed (in fact, petitioner had not yet pleaded guilty to the two state offenses), petitioner's argument that counsel provided inadequate representation in failing to request the court to run his sentence concurrent to the state sentences must fail, as it is without arguable merit. Counsel cannot be deemed ineffective for failing to raise a non-meritorious issue.

█ However, this does not end the inquiry, because petitioner states the ineffective assistance of counsel in broader terms ("failure of the defense counsel to take any steps to ensure a fully or partially concurrent sentence was ineffective assistance of counsel"; "Defense counsel failed to appreciate the liability in which the federal sentence would leave his client" if the federal sentence was not ordered to run concurrent to the future state sentences), and because a pro se section 2255 petitioner's pleadings are traditionally viewed quite liberally. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *United States v. Miller,* 197 F.3d 644, 646 (3d Cir.1999). So viewed, the question becomes, was there anything reasonably competent and professional counsel could have and should have done to ensure that petitioner's federal sentence would run concurrent or that he would be given credit for time spent in state custody on those anticipated state term of imprisonment? The answer is perhaps so, but we cannot answer that definitively on the record before the Court. Because petitioner states a colorable claim for relief

under *Strickland,* an evidentiary hearing will be necessary, at which petitioner will be represented by appointed counsel.

A couple of plausible steps counsel might have taken come to mind, but quickly are eliminated. The time for commencement of the federal sentence is when the prisoner is actually committed to the custody of the BOP, 18 U.S.C. § 3585(a), and the sentencing court has no authority to "start" the sentence prior to that time. *United States v. Pungitore,* 910 F.2d 1084, 1118–19 (3d Cir.1990); *Chambers v. Holland,* 920 F.Supp. at 621. Credit for prior time served in state custody is in the discretion of the BOP pursuant to 18 U.S.C. § 3585(b), *United States v. Wilson,* 503 U.S. 329, 333–35, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), as discussed above (subject to the court's ability to review the exercise of the BOP's discretion pursuant to 28 U.S.C. § 2241), but the court has authority to "adjust" a federal sentence under United States Sentencing Guidelines § 5G1.3(c) to account for time served in state custody in order to reflect a "reasonable punishment for the instant offense." *See, e.g. Rios v. Wiley; United States v. Dorsey.* In fact, the district court has authority to make a sort of "departure" pursuant to the methodology set forth in section 5G1.3(c) of the United States Sentencing Guidelines and its application notes, to recognize time already served for another offense. *United States v. Brannan,* 74 F.3d at 452–53 and n. 6. However, all of these cases interpreting the district court's authority to arrive at an appropriate sentence under section 5G1.3(c) to achieve a reasonable period of confinement for the instant offense involve the situation where the state sentence was imposed before the federal sentence; they do not, therefore, speak to the issue of whether the district court can exercise the discretion afforded in subsection (c) and the application notes where, as here, the federal sentence was first imposed and the state charges had not even been tried or pleaded to completion, let alone to sentencing.

This Court's discretion under section 5G1.3(c) to depart from or adjust the sentence could not have been invoked any more than its authority to enter its sentence concurrent to the anticipated but not imposed state sentences.

What counsel *might* have done, however, since he was aware of the pending state charges, was to request this Court to continue the sentencing hearing until the state charges had been prosecuted to completion and sentences imposed. If such a continuance had been granted, this Court would have had full discretion and ability to run the federal sentence concurrent to the state sentence pursuant to USSG § 5G1.3(b). Counsel might also have requested this Court to make a non-binding recommendation to the BOP to run the federal sentence concurrent to any state sentence eventually imposed on the pending state charges. Although this would be a non-binding recommendation under the circumstances, it is this Court's understanding, as petitioner points out, that the BOP recognizes there is authority to support the ability of a district court to impose a sentence concurrent to a yet to be imposed state sentence, and that it will follow such a recommendation by making the necessary *nunc pro tunc* designation after the prisoner has been delivered to federal custody. Bureau of Prisons Sentence Computation Manual CCCA Program Statement 5880.28.

While the prejudice to petitioner is rather apparent (as the government candidly concedes), this Court can draw no conclusions, at this stage of the proceedings, about defense counsel's "failure" to either request a continuance or request a recommendation of concurrency to the BOP, and does not find that such "failure" necessarily would fall below the prevailing norms of the legal profession. Indeed, the BOP itself considers the interaction of federal and state sentences where the state has primary jurisdiction to be "probably the single most confusing and least understood sentencing issue in the Federal system."

BOP Frequently Asked Questions, "How do Federal and State sentences interact when the Federal defendant is under State primary jurisdiction." The Court does find, however, that counsel's performance *may have been* deficient in this regard, and that petitioner presents a *colorable claim* under *Strickland* that cannot be denied without an evidentiary hearing.

The Court further finds that it is appropriate to appoint counsel to represent Mr. Smith at the evidentiary hearing and to negotiate with the Government with an eye toward reaching some amicable resolution of the issue.

An appropriate order will be entered.